is United States v. Boatman. Mr. Chandra. Thank you, Your Honors. May it please the Court, The appellant in this case presented substantial evidence in support of its argument for mitigation to the sentencing court. That evidence consisted of four parts. First, it was an outline of Mr. Boatman's chronic drug history and its relation to the criminal history that the court evaluated. So Mr. Chandra, I mean, just because it's a short argument, the court certainly considers the argument. What the court fails to grapple with, as I read this record, is the evidence that you're now describing. He doesn't say, well, I've read these studies and I don't care about them, or whatever else you might say. And certainly there's a lot of literature building up about what to do with people who have significant drug problems. But what the judge does say is that this isn't actually a case only about Mr. Boatman's addiction. It's a bank robbery case, and Mr. Boatman terrifies this teller by passing the note along, which the judge reads into the record. And so, looking at the record as a whole, it looks as though he considers the argument, he fails to say much about the underlying evidence, but he says, I know about 3553A, and I really think essentially time served plus community treatment isn't enough. So why is that in violation of what the Supreme Court has told us to do? Because the underlying evidence has performed the function of being the reason why the appellant made its argument. What it specifically means is, not only was there evidence asked to Mr. Boatman specifically through a drug treatment counselor. Right, yeah, there's a particular person. That drug treatment counselor also stated that his personal characteristics represent factors that show him with a less likelihood to recidivate than other individuals. And then the appellant then tied that to empirical studies that were looked at over a 20-year period of time through the National Institute of Drug Abuse, as well as the article produced by the JAMA Journal that said that conventional thinking, that is, by incarcerating people for long periods of time who are chronically drug addicted, that will teach them essentially not to commit further crimes. Of course, this is a derivative crime. I mean, I think the judge buys the argument. I think it's a very persuasive argument that he wouldn't have gone in to rob that bank if he hadn't needed money for his drug habit. It seems like the judge buys that. The court also states that had the prior courts imposed a sentence that was significant, he would have been deterred from committing this offense. And that theory of incapacitation for chronic drug abusers is exactly the evidence that the appellant submitted, which showed that that type of conventional thinking is in fact undermined by the empirical data. It's under attack, at least. I'm not sure that there's consensus on the other side, too. And the judge does also comment that he has paid attention to this, and he says it's one of the reasons I'm not up at 120 months. It's one of the reasons he goes down to the lower sentence. As to your point that it's not been acknowledged by the other side, one of the other pieces of evidence that we submitted was a quotation from the attorney general who stated specifically that community-based treatment for long-term chronically addicted is more effective than what was previously thought. So we attempted to show that not only is there evidence through empirical studies, through the academics, but also it's been accepted by the attorney general of the United States. The court's comment that before he imposed a sentence of 76 months, that had he received a long sentence prior, he would not have committed this offense, just simply shows either absolutely that the court ignored that information before he came to his sentence or didn't understand it. His comments then after he imposed a sentence, after questioning by counsel as to the basis of the sentence, that, well, the court did, in fact, consider various therapeutic interventions and various therapeutic procedures. He kind of summarizes. What's confusing about that comment is the very next sentence relates to the in-custody drug treatment program, which the court spent a lot of time talking about. However, the defense was suggesting that it was the community-based treatment that justifies its recommendation. I have a question, a factual question, which is you claim that the district court declined to apply the career offender enhancement, but the government seems to think that the district court applied it and then very downward. So which is it? All parties, including the probation department, felt that the career offender guideline should not be applied in this case. The court noted that and the court agreed. It also noted that without a career offender guideline sentence, the sentencing guidelines just on his criminal history and the otherwise applicable offense level would be in the range of 46 to approximately 57 months. Of course, the court would err if it did not accurately compute the guidelines first and then say, I actually think this is too much for one of the 3553A reasons and I'm going to take some guidance from what it might have been without career offender. But it's unfortunate, actually. It all gets blurred into one thing and somebody says, well, even though it applies, I'm not going to apply career offender because I think that's legal error. It was definitely blurred. But even for cases where the court does impose a below guideline sentence, a sufficient basis for its rejection of an appellant's argument needs to be in the record. And we submit that this case is very close to the case of U.S. v. Vidal. In that case, a forensic psychiatrist wrote a report that stated that that defendant's likelihood to commit future crimes would be greatly reduced if psychotropic medicine to address his bipolar disorders, post-traumatic stress disorder, and other disorders could be implemented. The district court in that case simply noted that, well, I'm aware of your mental health disorders, and essentially that was it. And this court stated that a mere mentioning of the defendant's argument is insufficient because it does not provide this court with any record that the district court evaluated the evidence and weighed it and then rejected it. And that is why we believe the language of it considered merely therapeutic or merely therapeutic alternatives or therapeutic procedures is sufficient. It's more akin to the Vidal case in that the court certainly appears to mention or make a reference to the defense argument, but there's absolutely no discussion of why the empirical data that suggests otherwise is being discounted by the court. And particularly if this court looks at it like not only is the empirical data, one, supporting of the defendant's position, but two, it also directly undermines the court's reasoning that incapacitation would be effective to have deterred Mr. Polkman. Okay. Do you want to take a minute for your rebuttal? We'll let you do that. Mr. Storino. May it please the court, my name is Timothy Storino. I represent the United States in this case of appeal. So what happened here? Did Judge Zagel apply? He declined to apply the career offender enhancement and then your brief seemed to assume that he did, but then very downward.  Your Honor, the latter. What Judge Zagel did in this case was found that the guidelines were 151 through 188 months with the application of the career offender guideline. That gave him a Category 6 and a 29 total offense level. There were no objections before the district court as to those guidelines, not by the defense, not by the government. The judge asked at the outset of the first sentencing hearing and no one raised an objection to the guidelines. The guidelines were never in dispute in this case. The career offender applied. What Judge Zagel said is that I'm going to vary downward from those guidelines and, frankly, the government filed a motion encouraging the judge to do so because the two qualifying controlled substance offenses were older offenses and amounted to approximately .8 grams of heroin and $40. So it's clear from the record, given no objection, that the career offender did apply, but the judge varied. You know, he never mentioned community-based treatment once. How should we go about concluding that he did address this truly non-frivolous argument? Yes, Your Honor. He did not use the words community-based treatment. You are correct. What he called it was therapeutic alternatives or therapeutic procedures. But that's so ambiguous because there are plenty of those in BOP as well. True, Judge, but it's not ambiguous in the context of this case, and here's why. When he said that phrase on page 48 of the appellate record in the second sentencing hearing, he said therapeutic procedures for which you, the defendant, have volunteered, which would lessen your danger to the community. Now, when you take that in place in the context, immediately before the judge made those statements, the defendant himself had allocated for the second time at about page 44 and said, Your Honor, please put me into a program in the community to receive drug treatment. And so then just two pages later, Judge Zagel is saying therapeutic procedures for which you have volunteered. In addition, the entire argument before the district court from the defense was that time served and drug treatment in the community would lower his chance of recidivism. Right, and recidivism in general. I mean, this is a guy who's taking the change from the TCF Bank, which everybody recognizes is a little unusual, and it's going to lower not just the chance of his robbing banks, although that too, but just the underlying problem is actually going to cure him so he won't be a drag on society. And you don't see Judge Zagel thinking about, you know, what's the better way to come out with a Mr. Boatman that's going to be an acceptable citizen? Well, I think he did consider it, Judge, and Your Honor mentioned it when counsel was speaking in his opening, which is after the imposition of sentence, Mr. Chandra re-raised all of his mitigation arguments, specifically drug addiction and specifically what he argued was the low chance of recidivism. In direct response to that, Judge Zagel said, I've considered those arguments, and had I not viewed them all as mitigation for you, Mr. Boatman, your sentence would have been 10 years as opposed to 76 months. So in essence, the court said, I've heard what you said. I've credited those arguments. However, and this is important, as Your Honor stated again, the very next page of the sentencing transcript on page 49, the judge said, there are other purposes for sentencing, other factors under 18 U.S.C. 3553-8. It's not just recidivism. It's not just rehabilitation. Those are important. I've considered those. It's also incapacitation, and it's also retribution. And that is why this case is different from Vidal. Vidal was just addressed cursory in the defendant's opening brief and addressed more substantively in the reply. But in Vidal, Your Honor, what happened there was the district court's consideration of mental health history or psychiatric history was in one sentence. I note that you have mental health issues. And what this court said was, you know, the judge, the sentencing court there, did not explain why it did not impose a lighter sentence. Judge Zagel did that expressly here. He explained why he did not impose a sentence of time served, saying that it, quote, deprecated the seriousness of the offense, and because I have to look to other factors, retribution and incapacitation. That makes this case much different from Vidal. Not to mention, also, this case, the record is replete with all of the judge's consideration of drug addiction and the low chance of recidivism. It's discussed in the first sentencing hearing, second sentencing hearing, and the judge actually credited and accepted it. In Vidal. But it's not replete, as Judge Rogner points out, with programs that address that inside BOP versus the community-based programs. And community-based programs, according to the literature, operate differently. They have different success rates, arguably better success rates. They do, Judge. And the court considered them. So I don't know where we see him thinking about that. It's very telegraphic at best. Well, Your Honor, again, I would direct the court to page 48, where the court said, if not for that mitigation, which I've considered, you would have received a higher sentence. Right. I mean, you have to go back to page 48. That's all you have. If the panel has no further questions, the government asks the court to affirm the defendant's conviction and sentence. All right. Thank you very much. If there's anything further, Mr. Chandra, I'll give you a full minute. The court's comments that the court, by saying, had it not been for the mitigation, it would have given a higher sentence. It's unclear that that comment refers to simply a recognition of Mr. Boatman's particular history of drug addiction, or whether it is addressing the basis for Mr. Boatman's recommendation that community-based treatment is empirically supported as a better means of achieving deterrence in the future and the protection of the public. That comment is not tied at all to the empirical data that Mr. Boatman submitted and we respectfully suggest is sizable in its role in supporting Mr. Boatman's final recommendation. And the counsel also discussed the Vidal case, indicating that that explanation the court simply was saying did not explain the basis for its sentence. However, it's more than that. In the Vidal case, this court, again, talks about the need for that district court to have evaluated and then reject the supporting data for mitigation. All right. Thank you very much. Thanks to both counsel. We'll take the case under advisement and the court will be in recess. Thank you.